[Civil No. 2541.  Filed November 29, 1926.]

[250 Pac. 995.]

JOHN D. JOHNSON, Appellant, v. R. E. MOORE,
PERRY M. LING, A. E. WEIDMAN, LEROY
ANDERSON, THOMAS R. SMART, PAUL H.
DEMING, VERDE SYNDICATE COPPER
COMPANY, a Corporation, and VERDE CEN-
TRAL EXTENSION COPPER COMPANY, a
Corporation, Appellees.

Mr. J. Gardner Scott, for Appellant.

Messrs. Anderson, Gale & Miller, for Appellees.

LOCKWOOD, J.—John D. Johnson, hereinafter called plaintiff, brought suit against R. E. Moore, Perry M. Ling, A. E. Weidman, Le Roy Anderson, Thomas R. Smart, Paul H. Deming, Verde Syndicate Copper Company, a corporation, and Verde Extension Copper Company, a corporation. We will here-

inafter use the word "defendants" as referring to the personal defendants only, unless the context shows clearly the corporations are meant to be included. An appearance was entered and a demurrer to the complaint filed, on the ground that it did not state a cause of action against defendants or any of them. The matter was presented to the court, and the demurrer was sustained, plaintiff being given leave to amend. Upon his refusal to amend, it was ordered that the cause be dismissed, and that defendants have judgment for their costs, and from such order this appeal is taken.

The sole question then for the determination of this court is whether or not the complaint stated a cause of action against any of the parties defendant. If it does, the order was erroneous, and the case must be reversed; if it does not, the action of the trial court was correct. In order that we may discuss the matter intelligently, we must state the substance of the complaint, but, as it is somewhat lengthy, we will only quote therefrom *verbatim* in the particular places where it seems necessary, contenting ourselves with a summary of the balance.

There are two alleged causes of action. In the first, after the formal statements as to residence, etc., plaintiff sets up that some time prior to January, 1923, defendants herein, together with one Joe Larson, associated themselves together under an agreement to incorporate and promote two mining corporations; to acquire for said corporations certain unpatented mining claims; and to divide the entire capital stock among themselves and the said Larson in the proportion of an undivided one-seventh each. In pursuance of said agreement, the two corporations above mentioned were duly caused to be incorporated by defendants, and all of them, except defendant Deming, were named as officers and directors of the corporations, and continued to act as such to the

time of this suit. The capital stock of each corporation as aforesaid was allotted to the six defendants in the proportion of one-seventh to each, and the remaining one-seventh to defendant Deming as trustee for Larson. Each of the corporations acquired certain unpatented mining claims in Yavapai county, which it is not necessary that we should describe particularly.

About two years later, and prior to April 20, 1925, plaintiff herein bought, through Deming as trustee, the undivided one-seventh interest of Larson in the corporations, and about the twentieth day of April of that year paid to each corporation at its request certain substantial sums of money, which the corporations represented to plaintiff were due as his share of the cost of the assessment work done by the respective corporations upon their mining claims. As evidence of plaintiff's ownership of the Larson interests, Deming executed and delivered to him an instrument in writing transferring such interest.

Some time later the Verde Syndicate Copper Company held a special stockholders' meeting at Jerome, Arizona. All of defendants were present and took part therein, plaintiff being present also, but not participating, for the reason that defendants refused to allow him to take any part in the meeting. A resolution was passed by unanimous vote of all stockholders participating, directing and authorizing the sale of the mining claims of the corporations, they being all of its property and assets, to the Verde Central Mines, Incorporated, another Arizona corporation, for the sum of $42,000. The proper conveyances were executed by the officers of the Verde Syndicate Copper Company, in pursuance with the resolution of sale, delivered to the purchaser, and by it duly recorded. Thereafter the Verde Central Mines, Incorporated, paid into the treasury of the Verde Syndicate Copper Company the said sum of

$42,000, and, as plaintiff alleges upon information and belief—

"Defendants R. E. Moore, Perry M. Ling, A. E. Weidman, Le Roy Anderson, Thomas P. Smart, Paul H. Deming, and Verde Syndicate Copper Company, each with the knowledge, consent, aid, and connivance of one with the other, but without the knowledge and consent of plaintiff, withdrew said sum of money, and the whole thereof, from the treasury of Verde Syndicate Copper Company, and divided and distributed the same between the said Moore, Ling, Weidman, Anderson, Smart, and Deming, but as to the amount or portion thereof taken or received by each or either of said persons plaintiff has no knowledge upon which to base a belief, and therefore cannot at this time allege the same."

Plaintiff further alleged that his interest in the Verde Syndicate Copper Company was worth the sum of $6,000; that for the reasons above set forth it would be futile for him to demand restitution to be made by the corporation or its officers or directors.

A second cause of action was set up which recited by reference the facts above set forth, and, further, that it was the intention of the Verde Central Extension Copper Company not to do the annual assessment work upon the unpatented mining claims which constituted its entire assets, but to permit them to revert to the United States government. There is the further allegation that the properties are of great value, and that any application to the corporation to do the work will be futile, for the reason it is controlled by defendants. The prayer for relief is that defendants and plaintiff be held to have been tenants in common of the mining claims sold, and that the vendor corporation be held to have been the trustee of the claims and their proceeds for the benefit of plaintiff and defendants; that the Verde Syndicate Copper Company be dissolved and disincorporated, and that plaintiff recover from defend-

ants and each of them the sum of $6,000. He further prays that he and defendants be held tenants in common of the mining claims standing in the name of the Verde Central Extension Copper Company, and that such corporation be held to be trustee for the benefit of plaintiff and defendants; that the court remove it and appoint some other trustee who would perform the duties falling on a trustee under the circumstances, and for general relief.

The general requisites of a good cause of action can be briefly summarized. They are: A legal right existing in the plaintiff, an illegal invasion of such right by the defendant, and a remedy recognized by the law as appropriate. If these appear on the face of the complaint, it is good against a general demurrer. It is alleged in the complaint as a first cause of action that plaintiff had acquired a one-seventh interest in the capital stock of each of the corporations mentioned. Under such circumstances, upon the sale of the property and a division of the proceeds, he was then entitled to one-seventh of the latter. 14 C. J. 817; 14a C. J. 1196. It is further stated that defendants, acting together, divided his share among themselves. If this be true, his rights were certainly invaded by them, and he would be entitled to relief against the invaders at the hands of the law, unless it should appear affirmatively there is some special reason such relief could not be granted.

We therefore will examine the reasons assigned by defendants in support of the demurrer to see if we find therein any cause why plaintiff may not recover on his complaint. It is first urged upon us that plaintiff depends for his right of recovery upon the fact that he is a stockholder of the two corporations through a purchase from Larson, and it is the claim of defendants, since the complaint does not show a compliance with paragraph 2106, Revised

Statutes of Arizona of 1913, Civil Code, plaintiff is not, legally speaking, a stockholder, and therefore has no right of action as such. This paragraph reads as follows:

"2106. Transfer of the stock shall not be valid except as between the parties thereto, until the same is regularly entered upon the books of the company so as to show the names of the persons by whom and to whom the transfer is made, the number or other designation of the shares, and the date of the transfer."

It does not appear from the complaint that any transfer of Larson's interest was made in that manner, and for the purposes of this argument we will assume it was not. Plaintiff contends, however, and so pleads in his complaint, that the corporations, by collecting from him certain sums of money which they could obtain only on the theory that he was a stockholder, have waived the requirements of the statute, and are estopped from denying him to be such. Similar questions have come before the courts in many jurisdictions, sometimes when the method of transfer was prescribed by the by-laws of the corporation, and sometimes when it was governed by a statute. So far as we are able to determine, it has been almost universally held that such provisions, whether statutory or otherwise, are intended for the benefit and protection of the corporation and its creditors, and that the corporation may waive a compliance therewith. The code of the state of Washington on this point reads as follows:

"Paragraph 3693. . . . No transfer shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares, and the date of the transfer."

This statute, which is almost word for word like ours, has been construed by the Supreme Court of Washington in the case of *Van Horn* v. *New Western Shingle Co. et al.,* 54 Wash. 117, 103 Pac. 42, and the rule above stated was upheld. The same general principle has been followed in many other cases. *Isham* v. *Buckingham,* 49 N. Y. 216; *Robinson* v. *National Bank New Berne,* 95 N. Y. 637; *Cecil Nat. Bank* v. *Watsontown Bank,* 105 U. S. 217, 26 L. Ed. 1039 (see, also, Rose's U. S. Notes); *Just* v. *State Sav. Bank of Ionia,* 132 Mich. 600, 94 N. W. 200; *Horton* v. *Mercer,* 71 Fed. 153, 18 C. C. A. 18.

It would certainly seem that, when a corporation requests and receives from an individual moneys to which it is entitled only on the theory that such individual is a stockholder, it has waived a strict compliance with either a by-law or a statute prescribing a method of establishing a transfer of stock, and is estopped from setting up the failure of the transferee of the stock to comply with the formal procedure. If the corporation cannot object, much less can the individual stockholders. The objection that plaintiff was not a stockholder because the statute was not followed is untenable.

As we have stated above, a stockholder in a corporation is entitled to his *pro rata* share of a division of the proceeds of the sale of property belonging to it either as a dividend in the ordinary course of the business or as incident to the winding up of the corporation, and it is undoubtedly the law that, if it declares a dividend, and while paying it to part of the stockholders fails to pay it to others, the ones who have not received their proportion may sue the corporation for it. 14 C. J. 842.

The complaint sets up what was in effect a declaration and payment of a dividend and an allegation that plaintiff has not received his share. It certainly, therefore, would state a good cause of action

as against the corporation defendant. It is urged, however, that no action lies against the individual stockholders, except perhaps Deming. If this be considered solely as an action on contract, there would be much force in this contention. We do not, however, consider the complaint is based on a right *ex contractu*, but rather one *ex delicto*. If the officers of defendant corporation had merely retained in their custody as such officers plaintiff's share of the proceeds of the sale, his remedy would indeed be *ex contractu*, but the allegation of the complaint is that the corporation and the individual defendants, with the "knowledge, consent, aid, and connivance one with the other," divided among the individual defendants, not only their *pro rata* of the $42,000 but also that which should have been paid plaintiff. If the trustee of a sum of money pays it to a person not entitled to receive it, with full knowledge on the part of the latter as to the facts, and his active participation in the illegal payment, it is undoubtedly a breach of trust, for which both the trustee and the recipient of the money are liable as in conversion. *White* v. *Sherman,* 168 Ill. 589, 61 Am. St. Rep. 132, 48 N. E. 128; *Duckett* v. *National Mech. Bank,* 86 Md. 400, 63 Am. St. Rep. 513, 39 L. R. A. 84, 38 Atl. 983; *American Trust & Bank Co.* v. *Boone,* 102 Ga. 202, 66 Am. St. Rep. 167, 40 L. R. A. 250, 29 S. E. 182; 38 C. J. 2055. We are therefore of the opinion that the first cause of action set up in the complaint is good against a general demurrer, both as to the individual defendants and their co-defendant, the Verde Syndicate Copper Company.

So far as the second alleged cause of action is concerned, the situation is different. The allegation in substance is that the Verde Central Extension Copper Company has failed and refused to cause the requisite assessment work to be done on the prop-

erty of the corporation. There is no allegation that such action on its part is for any fraudulent purpose or not in the exercise of reasonable judgment and discretion. It is a notorious fact that the locators of many mining claims, after expending considerable work and money thereon, come to the conclusion, and are justified therein, that it is not worth while proceeding any further, and the property is allowed to revert to the United States government. There is nothing in the complaint which shows that the corporation has not used the best of judgment in declining to expend any further time or money on these properties. The mere fact that plaintiff is of the opinion it is making a mistake would not justify this or any other court in compelling the company to do the assessment work, or in so ordering it that some other person or organization would do it for the benefit of plaintiff. The demurrer to the second cause of action set forth in the complaint is well taken.

The judgment of the superior court of Yavapai county is reversed and the cause remanded for proceedings not inconsistent with this opinion.

McALISTER, C. J., and ROSS, J., concur.