## FRANK H. EWING AND ANOTHER v. J. A. GMEINDER AND OTHERS.[1]

February 11, 1927.

No. 25,785.

**Question of law whether ownership of stock passed to trustees under contract quoted.**

1.  In an action by a receiver to recover the par value of capital stock issued as fully paid for nothing of any value, *held*:

(1)  That the stock was bonus stock, and liability rests upon fraud.

(2)  That whether a contract, under which plaintiff claimed defendants became the owners of such stock, passed ownership was a question of law.

**Contract did not subject trustees to liability as stockholders.**

2.  Contract, mentioned in opinion, construed as not constituting a transfer of ownership of such stock but a mere transfer of title in trust which does not subject defendants to liability in an action of this character.

**But it subjected to liability those to whom stock was completely transferred.**

3.  As to such stock the ownership of which was by the terms of the contract completely transferred, the defendants, under the circumstances are subjected to liability.

**Transfer on corporation's book not necessary to pass title.**

4.  A transfer on the books of a corporation is not necessary to pass title to the holder.

Contracts, 13 C. J. p. 542 n. 30; p. 784 n. 78.

Corporations, 14 C. J. p. 637 n. 15; p. 751 n. 53; p. 907 n. 58; p. 908 n. 63; p. 956 n. 50; p. 957 n. 54; p. 958 n. 59; p. 999 n. 14; p. 1000 n. 17; p. 1027 n. 87; p. 1028 n. 95; p. 1030 n. 9; p. 1031 n. 24 New; p. 1131 n. 77.

See note in 51 L. R. A. (N. S.) 56; 7 R. C. L. 360; 6 R. C. L. 443.

[1] Reported in 212 N. W. 446.

Plaintiff appealed in each action from an order of the district court for Sibley county, Tifft, J., denying his motion for a new trial. Modified and affirmed.

*James E. Trask* and *Morphy, Bradford & Cummins,* for appellants.

*W. H. Leeman* and *Odell & Fahey,* for respondents.

WILSON, C. J.

There are two actions to enforce liability of stockholders of the American Buckram Manufacturing Company and Henderson Casket Manufacturing Company, corporations, to their creditors, respectively, upon stock issued as fully paid for nothing of any value. The parties in both actions are the same. They were tried together. Plaintiff appealed from an order in each case denying his motion for a new trial.

Defendants Burrichter, Firminger and Chapple, herein referred to as the promoters, were the organizers and, at first, the managers of the corporations. Defendants Gmeinder, Schrupp, Berla, Moran and Bisson, herein referred to as the defendants, having pride in their community, encouraged the promotion of the corporations and became owners of some of the mortgage notes of the corporations. The organizations were perfected in the fall of 1919, when 2,400 shares of stock of the American Buckram Manufacturing Company were issued, 800 to each of the promoters. On March 10, 1920, 2,400 shares of the Henderson Casket Manufacturing Company were issued to them in equal proportion.

The management of the two corporations was not successful. The real estate and plant of the one were mortgaged for $25,000 and the other for $30,000.

On October 2, 1920, the promoters and defendants entered into a written contract relative to each corporation. For the purpose of transferring control to defendants, the promoters assigned and transferred to them, as trustees, six shares more than half of all the outstanding stock. Each contract also recited, in substance:

That defendants should elect themselves directors; and "as trustees of said stock and as directors" devise ways and means to

keep the concern going; not pay dividends until certain percentage of secured indebtedness should be paid; upon payment of all unsecured and 40 per cent of secured debts defendants would reassign the stock to the promoters; that defendants should have the right to vote the stock; and that one share of stock in said corporation transferred by the promoters to the defendants should be issued to each of defendants in his own name and the ownership should remain in defendants as individuals.

Defendants in good faith on October 2, 1920, accepted certificate No. 21 for 1176 shares in the American Buckram Manufacturing Company and certificate No. 4 for 1,326 shares in the Henderson Casket Manufacturing Company, issued to them as trustees. They elected themselves as the board of directors of each corporation. Within a few days they discovered the financial condition of the corporations to be much worse than had been represented. They abandoned all efforts of re-establishing the business. The plan having become impossible defendants did not formally reassign the certificates to the promoters who apparently were willing that the creditors should take all their interest, and on November 1, 1920, waived their rights under the contract with defendants by executing the usual form of assignment on the back of the certificates after changing the word "transfer" to "cancel." Certain notations were made on the stubs in the stock books evidencing an intention to cancel certificates No. 21 and No. 4 which were turned in to the corporation and attached to the stock book stubs.

Thereafter the receiver was duly appointed in each case. Proceedings were instituted resulting in an order for a 100 per cent assessment against the stockholders in each corporation. This action followed.

1. Upon the record the stock is bonus stock. A stockholder is liable for all unpaid instalments on stock owned by him. G. S. 1923, § 7465, subd. 1; First Nat. Bank of Deadwood v. Gustin M. C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. 510; Hastings M. Co. v. Iron Range Brg. Co. 65 Minn. 28, 67 N. W. 652; Downer v. Union Land Co. 113 Minn. 410, 129 N. W. 777; Hospes v.

N. W. Mfg. & Car Co. 48 Minn. 174, 175, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. 637; Dispatch Ptg. Co. v. Security B. & I. Co. 154 Minn. 211, 191 N. W. 601; Woodward v. Sonnesyn, 162 Minn. 397, 203 N. W. 221. In State Bank of Commerce v. Kenney Band Inst. Co. 143 Minn. 236, 173 N. W. 560, our authorities are collected. Liability in such case rests only upon fraud. No liability exists in favor of one whose debt was contracted prior to the issue because he could not have trusted the corporation upon the faith of such stock.

2. The important question is: Who owned this stock after October 2, 1920? No transfer of the stock was made on the books of the corporation. None was necessary to transfer title to the holder. Lund v. Wheaton R. M. Co. 50 Minn. 36, 52 N. W. 268, 36 Am. St. 623; U. S. & C. Land Co. v. Sullivan, 113 Minn. 27, 128 N. W. 1112, Ann. Cas. 1912A, 51; Ohman v. Lee, 149 Minn. 451, 184 N. W. 41.

Whether the contract passes ownership is a question of law. Dun. Dig. § 3407; Wells v. McNerney, 74 Conn. 675, 51 Atl. 1064; C. Aultman & Co. v. Silha, 85 Wis. 359, 55 N. W. 711. We may consider the surrounding circumstances. Dun. Dig. § 3400. The presumption that title passes upon the making of the contract (Jock v. O'Malley, 138 Minn. 388, 165 N. W. 233) depends upon its terms. It cannot exist in the teeth of a written contract containing language that makes it impossible. The question of ownership is not solved by determining that title passed.

The promoters on November 1, 1920, attempted to completely separate themselves from this stock. They did not relinquish it to defendants who surrendered possession of the certificates. We may fairly infer that the promoters and defendants were trying to release all their interest for the benefit of the corporations or their creditors. Their procedure was irregular. It is not suggested that the promoters escaped liability as stockholders nor that they attempted to do so. Their acts in this respect could not affect the status of defendants under the contract. They neither added nor detracted. It cannot be successfully urged that defendants were trying to enjoy the benefits and escape the burdens of a transfer. Courts have been

sedulous in their efforts to blot out schemes for that purpose. Defendants deny that there was a transfer. Except as hereinafter stated, they never consented to become stockholders. Indeed they have in no way assumed ownership of the stock or done anything which should estop them from asserting the true facts. They have not done those things which usually constitute estoppel. Thompson, Liability of Stockholders, § 223. This is not an action to enforce a stockholder's constitutional liability but relatively it concerns the ownership of the stock at the time the action was commenced. First Nat. Bank v. Winona Plow Co. 58 Minn. 167, 59 N. W. 997.

If defendants are stockholders it is because of the terms of the contract. Clearly they intended to hold the stock in trust directly for the benefit of the promoters and indirectly for the benefit of the creditors. They did not acquire any beneficial interest in the stock. Hence the rule that burdens follow benefits is not applicable.

The passing of title was solely for the purpose of investing power in defendants to carry out their plan of temporary control and not to make the stock their property. It did not even directly inure as a financial benefit to them. The fact that they owned an interest in the secured indebtedness is of no moment. Defendants were giving, not receiving benefits. Whether defendants were desirous of helping the promoters, the community or the holders of the mortgage notes, it is certain that they in fact never supposed they were becoming the owners of this stock. That was not the plan. If the venture had been successful the promoters would have been the principal beneficiaries. The transactions involving the efforts to cancel the stock cannot be construed as affecting the defendants. If the effort toward cancelation was futile, it is here immaterial. The contract clearly discloses the intent of the parties. If we look at the contract as being a reality, it is not illegal. It was crude. It was not fraudulent from any standpoint. It did not contravene the rights of stockholders, creditors, the corporation or the public. The creditors whom plaintiff represents have not been harmed nor was it the purpose of the contract to harm them. The intention was to help them. This is the reflection of the contract itself. It is not

unlawful to temporarily separate the voting power of stock from its owner. Every proxy does that. In this case there was no unlawful exercise of a lawful power nor was there an attempt to authorize the exercise of an unlawful power. But whether the contract is one that the promoters could have revoked at any time as indicated in Harvey v. Linville Imp. Co. 118 N. C. 693, 24 S. E. 489, 32 L. R. A. 265, 54 Am. St. 749, Sheppard v. Rockingham Power Co. 150 N. C. 776, 64 S. E. 894, and Shepaug Voting Trust Cases, 60 Conn. 553, 24 Atl. 32, is not material. It is urged that the contract was invalid and hence liability attached to defendants. Such a result would not necessarily follow. If not valid for the purposes made, it might well fall in its entirety as not representing the agreement of the parties. Such invalidity, if any, is not important upon the record before us. Nor can we hold, because the contract fails to expressly designate the cestui que trust, that, thereupon, by operation of law, a valid transfer which the parties never contemplated comes into existence. The good faith and harmless acts of the parties do not call for such harsh results.

We hold that it appears upon the face of the contract that defendants did not become the owners of the stock transferred to them in trust.

The language of the contract puts title to one share of stock in each of the defendants, and recites, "the ownership thereof shall be and remain in such second parties as individuals and not as trustees." The contract did not contemplate that this stock would be reassigned. We are of the opinion that as to this stock defendants subjected themselves to the liability claimed and must respond to the extent of the par value of the stock. They were familiar with the history of the transactions and must be charged in law with knowledge of the character of the stock.

The conclusion of law will be modified to impose liability upon each defendant resulting from the ownership of one share and plaintiff will be given judgment in each case accordingly. Otherwise the orders are affirmed.